UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CHARLES BROWER, JR.                         CIVIL ACTION

VERSUS                                      NO: 25-01097

BRANDON LEBLANC, et al.                     SECTION: T (4)

## <u>ORDER AND REASONS</u>

Before the Court is a Motion to Dismiss for Failure to State a Claim pursuant to Federal Rule of Civil Procedure 12(b)(6) filed by Defendants Brandon Leblanc and Gregory Champagne, in his Official Capacity as Sheriff of St. Charles Parish. R. Doc. 6. Plaintiff Charles Brower, Jr. has filed a response in opposition. R. Doc. 9. Defendants filed a reply. R. Doc. 12. Plaintiff also filed a supplemental memorandum, R. Doc. 17, to which Defendants filed a sur-reply, R. Doc. 20. After reviewing the pleadings and the applicable law, the Court will deny Defendants' Motion to Dismiss.

**BACKGROUND**

Plaintiff has brought suit pursuant to 42 U.S.C. § 1983 against St. Charles Parish Sheriff's Deputy Brandon LeBlanc and his employer Gregory Champagne in his Official Capacity as Sheriff of St. Charles Parish. R. Doc. 1. According to the Complaint, on January 2, 2024, Defendant LeBlanc and a fellow deputy conducted a traffic stop in Destrehan, Louisiana. LeBlanc stopped a motor vehicle registered to Plaintiff.  Plaintiff, however, was not operating the vehicle, nor was he

1

a passenger in the vehicle, nor was he present at the scene of the stop. Plaintiff's son, Charles Brower III, was a passenger in the vehicle, which was being driven by his brother. Because Charles Brower III was not driving, he did not have his driver's license in his possession at the time of the stop. In the course of the stop, LeBlanc retrieved vehicle registration information, either from a paper registration certificate contained in the vehicle or by an electronic search of the vehicle identification number.

The January 2, 2024, stop was video recorded by the body camera of LeBlanc and/or the other deputy. LeBlanc did not obtain a driver's license from Charles Brower III, because Brower III did not possess it and, as a passenger, was not required to possess it. It is presently unknown to Plaintiff whether LeBlanc electronically accessed the driver's license of Charles Brower III. LeBlanc did electronically access the driver's license of Plaintiff, whose only connection to the stop was that he was the registered owner of the vehicle. In doing so, LeBlanc learned Plaintiff's driver's license number, social security number, age, and physical description. LeBlanc knew, therefore, that Plaintiff was 43 years-old, stood 5 feet 7 inches tall, weighed 240 pounds, and was bald. The passenger, Brower III, by contrast, was 25 years-old, stood approximately 6 feet tall, weighed 155 pounds, and had a full head of brown hair. Further, LeBlanc viewed the driver's license photograph of Plaintiff and knew that Plainitff was not Brower III.

Plaintiff asserts that no officer could reasonably mistake Brower III for Plaintiff and that no reasonable officer could conclude that he had probable cause to charge either Plaintiff or Brower III with any crime or offense. Despite the absence of probable cause, arguable probable

2

cause, or any legal or factual justification whatsoever, LeBlanc prepared a traffic citation accusing Plaintiff of violating La. R.S. 32:51[1] and La. R.S. 32:53.

In the citation LeBlanc prepared, he identified Plaintiff as the violator and included the information from Plaintiff's driver's license; that is, Plaintiff's driver's license number, date of birth, height, weight, and other identifying information. LeBlanc gave the citation to Brower III whom LeBlanc knew was merely a passenger in the vehicle and not Plaintiff. LeBlanc's citation included a court date, ordering Plaintiff to appear in court on April 5, 2024.

LeBlanc made no attempt to provide the citation to Plaintiff or to advise him of the court date set by LeBlanc. Plaintiff states he knew nothing of the citation and court date until June 10, 2024. On that date, Dylan Nash, another St. Charles Parish Sheriff's deputy, stopped Plaintiff for an alleged traffic offense. In the course of the traffic stop, Nash learned that there was an active attachment for Plaintiff's arrest for his failure to appear in court on April 5, 2024, which was the court date set by LeBlanc in the citation he prepared on January 2, 2024, but did not provide to Plaintiff. As a result of the attachment, Nash did not merely ticket Plaintiff, but seized him, handcuffed him, arrested him, and took him to jail where he remained until he bonded out.

Ultimately, all charges against Plaintiff were refused by the District Attorney. On August

---

[1] La. R.S. 32:51 provides: "No person shall operate, or permit to be operated, any motor vehicle upon the highways of this state unless it is registered with the commissioner, the license tax is paid thereon, and it is operated in accordance with the provisions of this Chapter and other laws of this state." Defendants point out that Plaintiff, as the registered owner, allowed a vehicle to be operated without the license tax paid because the vehicle was pulled over for an expired temporary tag. R. Doc. 6-2, p. 1, n. 1.

6, 2024, the prosecutor entered a nolle pros as to all charges against Plaintiff, including those made by LeBlanc on January 2, 2024, and those made by Nash on June 10, 2024.

Plaintiff filed suit seeking damages for physical pain and suffering, mental and emotional outrage and distress, loss of enjoyment of life, the suspension of his driver's license, attorney's fees and defense costs. He asserts claims for false arrest and false imprisonment, unreasonable seizure, violation of due process, intentional infliction of emotional distress, malicious prosecution, punitive damages, and vicarious liability. R. Doc. 1, pp. 6-10. Defendants have filed a Motion to Dismiss pursuant to Rule 12(b)(6), alleging that Plaintiff has failed to state claims for relief. R. Doc. 6. Defendants also assert they are entitled to qualified immunity. *Id.*

LAW and ANALYSIS

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3 228, 239 (5th Cir. 2009). Nevertheless, the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678.

A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Id.* It need not contain detailed factual allegations, but it must go beyond

4

labels, legal conclusions, or formulaic recitations of the elements of a cause of action. Id. In other words, the face of the complaint must contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of each element of the plaintiff's claim. *Lormand*, 565 F.3d at 257. If there are insufficient factual allegations to raise a right to relief above the speculative level, or if it is apparent from the face of the complaint that there is an insurmountable bar to relief, the claim must be dismissed. *Twombly*, 550 U.S. at 555.

Section 1983 affords citizens the ability to sue police officers for deprivation of statutory or constitutional rights. 42 U.S.C. § 1983. Such claims encompass two foundational elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. *Wollfarth v. New Orleans City*, Civ. A. No. 20-01537, 2021 WL 6496847, *2 (citing *Parratt v. Taylor*, 451 U.S. 527, 535 (1981)). On the other hand, the doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. *Id.*

In light of these interests, the Supreme Court established in *Katz v. Saucier* a two-prong sequence for resolving government officials qualified immunity claims. *Id.* at 232 (citing *Katz v.*

5

*Saucier*, 533 U.S. 194 (2001)). First, a court must decide whether the facts alleged establish a violation of a constitutional right. *Id*. (citing *Katz v. Saucier* at 201). Second, if the plaintiff has satisfied this first step, the court must then decide whether the right at issue was "clearly established" at the time of defendant's alleged misconduct. *Id.* Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right. *Anderson v. Creighton*, 483 U. S. 635, 640 (1987). The Supreme Court has since reconsidered the inflexibility of *Katz v. Saucier* by granting lower courts discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in the light of the particular case at hand. *Wollfarth*, supra, at \*2 (citing *Pearson*, 555 U.S. 223, 236). Even if the evidence supports a conclusion that plaintiff's rights were violated, qualified immunity may still be invoked unless "the government officials violated clearly established statutory or constitutional rights of which a reasonable person would have known." *Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009). "Qualified "immunity shields from civil liability all but the plainly incompetent or those who knowingly violate the law." *Id.*

When the defense of qualified immunity is raised in a motion to dismiss, "it is the defendant's conduct as alleged in the complaint that is scrutinized for objective legal reasonableness." *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). A court must determine that a plaintiff's pleadings "assert facts which, if true, would overcome the defense of qualified immunity." *Zapata v. Melson*, 750 F.3d 481, 485 (5th Cir. 2014). A plaintiff seeking to overcome qualified immunity "must plead specific facts that both allow the court to draw the

6

reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Blacke v. LeBlanc*, 692 F.3d 645, 648 (5th Cir. 2012).

Defendants first assert that Plaintiff cannot prevail on his claim for false arrest because Leblanc was not present at the arrest conducted by Deputy Dylan Nash, and Nash was acting on an active attachment issued by a judge of the 29th Judicial Court. Defendants also assert that Plaintiff cannot satisfy the elements of malicious prosecution because there was no institution of prosecution because the charges were refused by the District Attorney.[2] Defendants next assert that Plaintiff has not asserted facts supporting a finding that the official conduct was motivated by evil intent or demonstrates reckless or callous indifference to a person's constitutional rights, such

---

[2] The Fifth Circuit in *Armstrong v. Ashley*, 60 F.4th 262, 278–79 (5th Cir. 2023) addressed the status of a federal claim for malicious prosecution and the elements in the Fifth Circuit. The Supreme Court recently held that litigants may bring a Fourth Amendment malicious prosecution claim under § 1983. *Thompson v. Clark*, —— U.S. ——, 142 S. Ct. 1332, 1337, 212 L.Ed.2d 382 (2022). The Court identified three minimum elements to common law malicious prosecution claims, "(i) the suit or proceeding was 'instituted without any probable cause'; (ii) the 'motive in instituting' the suit 'was malicious,' which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution" terminated in favor of the accused. *Id.* at 1338. Defendants point out that parties asserting a Fourth Amendment malicious prosecution claim under § 1983 must prove (1) the commencement or continuance of an original criminal proceeding; (2) its legal causation by the present defendant against plaintiff who was defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) malice; and (6) damages.", in addition to the threshold element of an unlawful Fourth Amendment seizure. R. Doc. 6-2, pp. 7-8 (citing *Thompson*, 142 S. Ct. at 1337 n.2) and *Bledsoe v. Willis*, 665 F. Supp. 3d 810, 818 (W.D. La. 2023), *aff'd*, No. 23-30238, 2023 WL 8184814 (5th Cir. Nov. 27, 2023)).

that he would be entitled to punitive damages under § 1983. R. Doc. 6-2, pp. 8-9. Defendants also contend that Plaintiff cannot prevail on a claim for intentional infliction of emotional distress, because in this case there is at most an error on the part of the deputy, rather than extreme or outrageous conduct.[3] R. Doc. 6-2, pp. 10-12. Defendants also contend there are no violations of state law, so that the Court should dismiss those claims or decline to exercise supplemental jurisdiction. R. Doc. 6-2, p. 12. Finally, Defendants assert the defense of qualified immunity for Leblanc, who did not arrest Plaintiff. R. Doc. 6-2, pp. 12-17.

The Court, however, in deciding a Rule 12(b)(6) motion must accept all well-pleaded facts as true and view them in the light most favorable to the Plaintiff. *Campbell v. Wells Fargo Bank, N.A.*, 781 F.2d 440, 442 (5th Cir. 1986). While it is a close question, the Court can reasonably infer that Plaintiff has sufficiently pleaded all the elements of a § 1983 claim against Deputy Leblanc and Sheriff Champagne. Notwithstanding the Court's finding that Plaintiff has minimally satisfied the pleading standard by alleging facts essential to the establishment of a violation of his rights, relief is not guaranteed. The issues pertaining to the questions of false arrest, malicious prosecution, punitive damages, intentional inflictions of emotional distress, and qualified

---

[3] To prevail on a claim for intentional infliction of emotional distress, a plaintiff must prove: "(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209 (La. Sept. 9, 1991). The plaintiff's burden is a heavy one. *Scamardo v. Dunaway*, 96-1036 (La. App. 5 Cir. 4/29/97), 694 So.2d 1041, 1042, *writ denied*, 97-1395 (La. 9/5/97), 700 So.2d 517.

immunity are questions better suited for summary judgment or trial. Indeed, most of the cases relied upon by Defendants were decided on summary judgment. For pleading purposes, however, Plaintiff has stated claims upon which relief may be granted.

Accordingly,

**IT IS ORDERED** that Motion to Dismiss for Failure to State a Claim (R. Doc. 6) is DENIED.

New Orleans, Louisiana, this 31st day of March 2026.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE

9