**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **CHARLES BROWER, JR.** | **CIVIL ACTION** |
| **VERSUS** | **NO: 25-1097** |
| **BRANDON LEBLANC AND GREGORY CHAMPAGNE, IN HIS OFFICIAL CAPACITY AS SHERIFF OF ST. CHARLES PARISH, ET AL** | **SECTION: "T" (4)** |

**ORDER & REASONS**

Before the Court is a **Motion to Limit Discovery (R. Doc. 39), filed by Brandon Leblanc and Gregory Champagne, in his official capacity as Sheriff of St. Charles Parish** to limit discovery to only those facts necessary to resolve defendant's affirmative defense of qualified immunity. The motion is opposed. R. Doc. 43.

## I. Background

Plaintiff has brought suit pursuant to 42 U.S.C. § 1983 against St. Charles Parish Sheriff's Deputy Brandon LeBlanc ("Leblanc") and his employer Gregory Champagne in his Official Capacity as Sheriff of St. Charles Parish. R. Doc. 1. According to the Complaint, on January 2, 2024, Defendant LeBlanc and a fellow deputy conducted a traffic stop in Destrehan, Louisiana. LeBlanc stopped a motor vehicle registered to Plaintiff. Plaintiff, however, was not operating the vehicle, nor was he a passenger in the vehicle, nor was he present at the scene of the stop. *Id.* Plaintiff does not specify in the complaint the capacity that he seeks to sue Deputy Brandon LeBlanc. *Id.*

Plaintiff's son, Charles Brower III, was a passenger in the vehicle which was being driven by his brother. *Id*. Because Charles Brower III was not driving, he did not have his driver's license in his possession at the time of the stop. *Id.* In the course of the stop, LeBlanc retrieved vehicle

registration information, either from a paper registration certificate contained in the vehicle or by an electronic search of the vehicle identification number. *Id.*

The January 2, 2024, stop was video recorded by the body camera of LeBlanc and/or the other deputy. R. doc. 31. LeBlanc did not obtain a driver's license from Charles Brower III, because Brower III did not possess it and, as a passenger, was not required to possess it. *Id.* LeBlanc learned Plaintiff's driver's license number, social security number, age, and physical description during the stop. *Id.*

LeBlanc knew, therefore, that Plaintiff was 43 years-old, stood 5 feet 7 inches tall, weighed 240 pounds, and was bald. R. doc. 39-1. The passenger, Brower III, by contrast, was 25 years-old, stood approximately 6 feet tall, weighed 155 pounds, and had a full head of brown hair. *Id*. Further, LeBlanc viewed the driver's license photograph of Plaintiff and knew that Plaintiff was not Brower III. *Id.* Plaintiff asserts that no officer could reasonably mistake Brower III for Plaintiff and that no reasonable officer could conclude that he had probable cause to charge either Plaintiff or Brower III with any crime or offense. *Id.* Despite the absence of probable cause, arguable probable cause, or any legal or factual justification whatsoever, LeBlanc prepared a traffic citation accusing Plaintiff of violating La. R.S. 32:511 and La. R.S. 32:53. *Id* at 2.

In the citation LeBlanc prepared, he identified Plaintiff as the violator and included the information from Plaintiff's driver's license; that is, Plaintiff's driver's license number, date of birth, height, weight, and other identifying information. *Id.* LeBlanc gave the citation to Brower III whom LeBlanc knew was merely a passenger in the vehicle and not Plaintiff. LeBlanc's citation included a court date, ordering Plaintiff to appear in court on April 5, 2024. *Id.*

LeBlanc made no attempt to provide the citation to Plaintiff or to advise him of the court date set by LeBlanc. *Id.* Plaintiff states he knew nothing of the citation and court date until June

10, 2024. *Id.* On that date, Dylan Nash, another St. Charles Parish Sheriff's deputy, stopped Plaintiff for an alleged traffic offense. In the course of the traffic stop, Nash learned that there was an active attachment for Plaintiff's arrest for his failure to appear in court on April 5, 2024, which was the court date set by LeBlanc in the citation he prepared on January 2, 2024, but did not provide to Plaintiff. *Id.* As a result of the attachment, Nash did not merely ticket Plaintiff, but seized him, handcuffed him, arrested him, and took him to jail where he remained until he bonded out. *Id.*

Ultimately, all charges against Plaintiff were refused by the District Attorney. *Id.* On August 6, 2024, the prosecutor entered a nolle pros as to all charges against Plaintiff, including those made by LeBlanc on January 2, 2024, and those made by Nash on June 10, 2024. *Id.* Plaintiff filed suit seeking damages for physical pain and suffering, mental and emotional outrage and distress, loss of enjoyment of life, attorney's fees and defense costs. *Id.* He asserts claims for false arrest and false imprisonment, unreasonable seizure, violation of due process, intentional infliction of emotional distress, malicious prosecution, punitive damages, and vicarious liability. R. Doc. 1, pp. 6-10.

## II. <u>The Background</u>

On March 31, 2026, this Honorable Court denied Defendants' Motion to Dismiss, but in doing so, the Court did not issue a ruling on the merits of the Defendants' defenses and/or claim of qualified immunity. R. doc. 39-1. After concluding that "it is a close question" and that "Plaintiff has minimally satisfied the pleading standard," this Honorable Court also stated, "relief is not guaranteed." *Id.*

In denying the motion, the Court further held "[t]he issues pertaining to the questions of false arrest, malicious prosecution, punitive damages, intentional inflictions of emotional distress,

and qualified immunity are questions better suited for summary judgment or trial." R. doc. 31 at 8. However, now the Defendants seek an order limiting discovery to only those facts necessary to resolve the issue regarding the defendant's affirmative defense of qualified immunity. *Id.*

Trial in this matter is scheduled for Monday, January 11, 2027. R. doc. 38. All discovery shall be completed by Monday, November 2, 2026, and all pretrial motions, including motions for summary judgment should be filed no later than Wednesday November 18, 2026. *Id.*

## III. Standard of Review

Rule 26(c) of the Federal Rules of Civil Procedure allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" requirement indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.,* 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978) ).

"Trial courts possess broad discretion to supervise discovery." *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990) (citation omitted). "A trial court has broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Petrus v. Bowen*, 833 F.2d 581, 583 (5th Cir. 1987).

"The qualified immunity defense affords government officials not just immunity from liability, but immunity from suit." *Vander Zee v. Reno*, 73 F.3d 1365, 1368 (5th Cir. 1996) (citing *Mitchell v. Forsyth*, 472 U.S. 511, 525-26 (1985)). Qualified immunity shields government officials from individual liability for performing discretionary functions, unless their conduct

violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

"One of the most salient benefits of qualified immunity is protection from pretrial discovery, which is costly, time-consuming, and intrusive[.]" *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) (citing *Helton v. Clements,* 787 F.2d 1016, 1017 (5th Cir. 1986) ).

Accordingly, the Fifth Circuit "has established a careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." *Backe*, 691 F.3d at 648. Under this procedure, "a district court must first find 'that the plaintiff's pleadings assert facts which, if true, would overcome the defense of qualified immunity.' " *Id*. (citing *Wicks v. Miss. State Emp't Servs*., 41 F.3d 991, 994–95 (5th Cir. 1995); *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, (2009) (directing that a plaintiff must "state a claim for relief that is plausible on its face"—excluding statements that are "no more than conclusions" which are "not entitled to the assumption of truth")).

"Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe*, 691 F.3d at 648. "After the district court finds a plaintiff has so pled, if the court remains 'unable to rule on the immunity defense without further clarification of the facts,' it may issue a discovery order 'narrowly tailored to uncover only those facts needed to rule on the immunity claim.' " *Id*. (citing *Lion Boulos v. Wilson*, 834 F.2d 504, 507-08 (5th Cir. 1987)).

## IV. Analysis

Defendants seek an order from the Court limiting discovery to the facts necessary to resolve the issue of qualified immunity. Defendants argue they have raised qualified immunity by alleging

it in their answer, and on that basis request the court limit discovery and not permit general discovery. Rec. Doc. 52-1. The defendants point out that they filed a Motion to Dismiss seeking dismissal of the false arrest, malicious prosecution punitive damages and respondeat superior liability claims. *Id.* Additionally, the motion on behalf of Brandon Leblanc sought dismissal based on his right to qualified immunity. *Id.* The defendants point out that the Court denied the Motion to Dismiss but did not issue a merits ruling on its qualified immunity defense. *Id.* The Defendants also contend that the Court signaled that summary judgment is probably a better mechanism to raise the issue of qualified immunity. *Id.*

Plaintiffs Charles Brower, Jr. ("Brower") opposes the motion. Rec. doc. 43. He contends that the discovery deadline is less than four (4) months away and that LeBlanc seeks to limit discovery to protect himself from the burdens of discovery when the plaintiff has not filed an adequate claim. *Id.* at. 2. Brower contends that the Court determined that his allegations defeat LeBlanc's defense of qualified immunity. *Id.* Brower contends that he also asserts claims pursuant to state law.

In order to seek a stay based on the qualified immunity defense, Defendants must first raise the issue in a dispositive motion. *See, e.g., Rowe v. Romero*, 225 F.R.D. 640, 644 (D. Colo. 2004) (Holding that it may be appropriate to stay discovery only after the issue of qualified immunity is presented to the Court for adjudication). The government official who does not raise qualified immunity in a motion to dismiss "cannot be said to be unduly burdened if he foregoes an opportunity to address the issue prior to the commencement of discovery and instead waits to assert it until some point later in the litigation." *Id.*

The Fifth Circuit recently clarified that all discovery involving a defendant raising the defense of qualified immunity must be stayed until resolution of the defense of qualified immunity:

> The Supreme Court has now made clear that a plaintiff asserting constitutional claims against an officer must survive the motion to dismiss (and the qualified immunity defense) without any discovery. Our prior decisions to the contrary are overruled.

*Carswell v. Camp,* 37 F.4th 1062, 1066 (5th Cir. 2022) (expressly overruling Lion Boulos v. Wilson, 834 F.2d 504, 508–09 (5th Cir. 1987) and its progeny). In *Carswell*, the Fifth Circuit concluded that a district court abused its discretion by deferring its ruling on a motion to dismiss on qualified immunity grounds and subjecting the public official defendants to discovery on the plaintiff's Monell claims, which created an undue burden in light of increased litigation costs and complications caused by bifurcated discovery. *Carswell*, 37 F.4th at 1068-69.

"In other words, the Court ruled out even 'minimally intrusive discovery' against official defendants before a ruling that plaintiff had met his burden to overcome the qualified immunity defense at the pleading stage." *Id*. *Skinner v. Gautreaux,* 2022 WL 16752843 (M.D. La. Nov. 7, 2022)( Where the Court noting that there was a pending Motion to Dismiss based on defense of qualified immunity at the pleading stage and therefore stayed discovery pending the Motion to Dismiss).

As the defendants have raised the issue of qualified immunity as an affirmative defense and has twice raised the issue for the court's decision but not ruled on in the first instance, an order limiting discovery remains appropriate. R. doc. 35. Notably, while the defendant Leblanc raised the issue in its Motion to Dismiss, the Court did not decide as to whether he was qualifiedly immune as contemplated by circuit law. Instead, the Court said that the issue was best handled on a Motion for Summary Judgement. To further complicate matters, the defendants have since followed the court's instruction and filed a Motion for Summary Judgment addressing the issue. Therefore, the issue is currently pending before the district court, and no discovery has taken place at this time. However, this does not end the inquiry.

In addition to the above authority, there are other factors complicating the validity of the defendants' request. First, one of the defendants, LeBlanc who seeks the discovery limitation order was sued but the complaint does not identify the capacity in which he was sued. The complaint does however seek damages against both defendants where Champagne was sued in his official capacity but not LeBlanc.

In this district, when a plaintiff does not specify in his complaint whether a defendant is named in his or her official or individual capacity, it is presumed by that the defendant is named in his or her official capacity. *See Able Sec. and Patrol, LLC v. Louisiana*, 2010 WL 1294053, *3 (E.D.La.2010) citing *Stokes v. Culver* 2008 WL 4724306, at *4 (E.D. La., October 24, 2008) (Unpublished)(Barbier, C.) citing *Soper v. Hoben,* 195 F.3d 845, 853 (6th Cir.1999), *cert. denied*, 530 U.S. 1262, 120 S. Ct. 2719, 147 L.Ed.2d 984 (2000).

Interpreting the pleadings in the broadest light, it is unclear whether Brower intended to sue LeBlanc in his individual capacity. The only possible indicator is that the plaintiff seeks damages against LeBlanc, which implicitly rather than explicitly might suggest that he intended to sue him in his individual capacity. Otherwise, the only pleadings in the record addressing qualified immunity are the responsive pleadings to the defendants' various motions seeking a dismissal on that basis. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) ("In many cases, the complaint will not clearly specify whether officials are sued personally, in their official capacity, or both. 'The course of proceedings' in such cases typically indicate the nature of the liability sought to be imposed.") See Rec. doc. 6, 9, 14, 18, 20, 24, 28, 31, 39, 43. Given the lack of clarity in the pleadings, the Court declines to limit discovery.

Second, the Plaintiff, in addition to the Federal §1983 claims, also assert supplemental state law claims for assault and battery, emotional distress, and LeBlanc separately seeks punitive

damages to which the defense of qualified immunity does not apply. *See* R. Doc. 1, Case No 25-01097.

## V. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that the Defendants' **Motion to Limit Discovery (R. Doc. 39)** is **DENIED for the reasons assigned above.**

New Orleans, Louisiana, this 18th day of August 2026.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**